Date signed July 09, 2012



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In Re: Barton-Cotton, Incorporated, | : | |
| | : | **CASE NO. 09-12066 -DK** |
| | : | **CHAPTER 7** |
| Debtor. | : | |
| _____ | : | |
| Mark J. Friedman, Trustee | : | |
| | : | |
| Plaintiff, | : | **ADVERSARY NO. 11-00079** |
| | : | |
| v. | : | |
| | : | |
| American Capital, LTD, et. al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION

Before the Court for consideration is Defendants' Motion to Dismiss Adversary

Complaint (dkt. no. 18) and accompanying Memorandum in Support of Defendants' Motion to

Dismiss Adversary Complaint (dkt. no. 19) (collectively referred to as the "Motion") asserting

that the Complaint fails to state facts upon which the relief prayed by the Plaintiff can be

granted. For the reasons stated *infra*, the Motion will be denied in full.

## I. Applicable Facts

As stated in the Motion, the Complaint "fundamentally challenges two transactions": (1)

a 2006 grant of a lien by Barton Cotton, Incorporated ("Debtor") as a part of a leveraged buyout of the stock in Debtor from the prior owners ("Sellers"), and (2) a 2007 refinancing pursuant to which Defendant American Capital[1] ("Defendants") received cash from a new lender and released its liens.  In broad summary Defendants argue that the well pleaded factual allegations set out in the Complaint fail to support a "plausibility" of entitlement to the relief sought.

The Plaintiff in this action is the Chapter 7 Trustee and as such stands in the shoes of Debtor with standing to bring an avoidance action under, *inter alia,* 11 U.S.C.  §§ 544 and 548.[2] Here, the Trustee asserts that Defendants received a transfer of an interest in property of Debtor though the 2006 leveraged buyout in the form of a lien in exchange for which Debtor did not receive either "reasonably equivalent value" or "fair consideration" as those terms are set forth in N.Y. Debt. Cred. Law §§ 270-281; Md. Code Ann. Com. Law §§ 15-201-15-214, and Section 548..

The Complaint alleges, in relevant part, that American Capital formed Barton-Cotton Holding Corporation ("Holding") to be the holder of the Debtor's stock being acquired from Sellers.  Holding was owned almost entirely by American Capital, except for a small percentage provided to the Debtor's management in connection with the stock purchase.  Holding financed the purchase of the Debtor's stock through a financing commitment from American Capital.

According to the Complaint, the financing was effectuated through an Insider Credit

---

[1] The Complaint names American Capital, LTD, two affiliated entities, as well as individuals as defendants.  Footnotes 1 and 2 of the Motion explain that on June 30, 2010, American Capital Financial Services, Inc. merged with American Capital, Ltd.  The Motion collectively refers to these entities as "American Capital."

[2] Hereafter, all statutory citations refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

Agreement[3] and associated First Lien Pledge and Security Agreement Equity Purchase Agreement,[4] as well as a Note and Equity Purchase Agreement.[5] Under the Insider Credit Agreement Debtor received loan proceeds of at least $40 million plus an additional $15 million in revolving credit facility from American Capital's financing. In addition, $7.5 million in fees were paid to American Capital. In turn, Debtor granted senior secured liens in favor of American Capital and Debtor was required to distribute a significant part of the loan proceeds to the Sellers as partial satisfaction of the obligation of Holding to pay for the shares of Debtor. Furthermore, pursuant to the Note and Equity Purchase Agreement, Debtor, its subsidiaries, and Holding delivered Subordinated Notes to Defendants in the amount of $29 million to finance the stock acquisition and these note makers secured the obligation by a second lien position on the assets of Debtor. It is asserted that the loan proceeds were part of the funding used by Holding to acquire the Debtor's stock.

The Trustee argues that Debtor received neither reasonably equivalent value nor fair consideration for the transfers by lien from Debtor to American Capital and that Debtor was rendered insolvent as a result of the transfers. In addition the Trustee asserts that Defendants acted with actual intent to hinder, delay or defraud present and future creditors of Debtor by approving these transactions.

The Motion disputes that Debtor received neither fair consideration nor reasonably equivalent value, and argues that the Complaint never asserted that loan proceeds were given to

---

[3] Exhibit 3 to Complaint.

[4] Exhibit 4 to Complaint.

[5] Exhibit 5 to Complaint.

Defendants.[6]  Although the financing arrangement may have theoretically provided loan proceeds to Debtor in exchange for liens, the Complaint alleges that Debtor at the same time was required to upstream  a substantial part of the proceeds to the Sellers whose stock was being acquired by Holding for the benefit of American Capital.  It is alleged that, in effect, American Capital acquired the property of Sellers (stock) and liens from Debtor in exchange for providing the funds to pay Sellers.

The Second Transaction is characterized as a "cashout" in a Noninsider Credit Agreement.  It is averred that "solely in order to cashout",[7] Debtor was required to obtain Noninsider Loans in exchange for senior liens in all of the Debtor's assets.  In order to secure the above assets, Debtor was directed to pay American Capital $45,926,431.61.[8]  The Trustee argues that by receiving the payoff amount, American Capital in fact received a "cashout" from Debtor for the release of the Insider Pledge that had been imposed on the Debtor's assets solely for the benefit of American Capital, without reasonably equivalent value or fair consideration for Debtor itself.

**II. Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)"), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7008, requires a complaint to set out a

---

[6] The Defendants' argument is not grounded accurately on the controlling statutes.  Both the Uniform Fraudulent Transfer Act as enacted in New York and Section 548 require, for avoidance of a transfer on a basis other than actual fraud to stand, that the transferor did not receive reasonably equivalent value (Section 548) or fair consideration (New York law).  Thus it is the non-receipt by Debtor of value, not the non-receipt by American Capital, that is the critical fact.

[7] Complaint, dkt. no. 1, p.13.

[8] Exhibit 8 to Complaint.

"short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), requires the dismissal of a complaint if it fails to state a claim upon which relief can be granted.[9]

Pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded allegations contained in the complaint, and construe them in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007), a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." A claim has "facial plausibility" when the well pleaded facts allow the court to draw a "reasonable inference" that the elements of the claim have been satisfied. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 1940 (2009). Under this plausibility standard, a complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678, 129 S.Ct. at 1949. Indeed, a plaintiff must provide more than "a formulaic recitation of the elements of a cause of action. . . ." *Twombly*, 550 U.S. at 555, 127 S.C. at 1965.

Additionally, Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7009, states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake", including allegations regarding "the time, place, and contents of the false representations, as well

---

[9] Federal Rule of Civil Procedure 12(b)(6) provides: "(b) Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted."

as the identity of the person making the misrepresentation, and what [was] obtained thereby."
*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  *See also*
*Nat'l Mortgage Warehouse, LLC v. Trikeriotis*, 201 F.Supp. 2d 499, 504 (D. Md. 2002).
However, Rule 9(b) also permits that "[m]alice, intent, knowledge, and other conditions of a
person's mind may be alleged generally."  The United States Court of Appeals for the Fourth
Circuit in *Harrison* explained that courts should hesitate to dismiss a complaint under Rule 9(b)
so long as "(1) the defendant has been made aware of the particular circumstances for which she
will have to prepare a defense at trial, and (2) that the plaintiff has substantial prediscovery
evidence of those facts."  *Id.* at 784.

Bankruptcy courts have consistently held that the heightened pleading requirements of
Rule 9(b) should be relaxed in cases brought by a third party trustee because of the trustee's
"inevitable lack of knowledge concerning acts of fraud previously committed against the debtor,
a third party." *Schwartz v. Kursman (In re Harry Levin, Inc. t/a Levin's Furniture)*, 175 B.R.
560, 567-68 (Bankr. E.D.Pa. 1994) (*quoting Collier on Bankruptcy* ¶ 7009.05, at 7009-5 (L.
King 15th ed. 1994).  *See also Miller v. Dutil (In re Total Containment)*, 335 B.R. 589, 600-01
(Bankr. E.D.Pa. 2005) ("Flexibility in construing the particularity requirement of Fed. R. Civ. P.
9 is particularly apt when a fraud claim is brought by a bankruptcy trustee.  The trustee has no
first-hand knowledge of the prepetition acts that gave rise to the alleged fraud, and may or may
not receive the cooperation of the debtor in this regard."); *In re Everfresh Beverages, Inc*., 238
B.R. 558, 581 (Bankr. S.D.N.Y. 1999) ("In the bankruptcy context, however, courts have noted
that Rule 9(b) should be interpreted liberally, particularly when the trustee, a third party outsider
to the fraudulent transactions, is bringing the action.").

### III. Applicable Law

New York and Maryland have both adopted the Uniform Fraudulent Conveyances Act ("UFCA"). N.Y. Debt. Cred. Law §§ 270-281; and Md. Code Ann. Com. Law §§ 15-201 - 15-214. The Complaint pleads violations of both New York and Maryland law, seeking relief in the alternative.

### IV. Counts I and V: N.Y. Debt. Cred. Law §§ 276, 278, 279 and Md. Code Ann. Com. Law §§ 15-207, 15-209, 15-210

In Counts I and V of the Complaint, the Trustee seeks to avoid the transfer of "Insider Pledge" and "Financing Fees" ("First Transfer") and recover the value thereof pursuant to N.Y. Debt. Cred. Law §§ 276, 278, 279 and Md. Code Ann. Com. Law §§ 15-207, 15-209, 15-210.[10] Because the statutes deal solely with actual fraudulent intent, as opposed to implied or presumed intent, the heightened pleading requirement of Rule 9(b) applies.

In *Air Cargo, Inc. Litig. Trust v. i2 Techs., Inc. (In re Air Cargo, Inc.)*, 401 B.R. 178 (Bankr. D. Md. 2008), the complaint contained only allegations that the defendants had knowingly provided insufficient technology to the debtor and detailed the amounts the debtor paid under the contract. *Id* at 183-184. Despite finding that Rule 9(b) did not apply to that matter, the court held that the trustee had still alleged sufficient facts in the complaint to satisfy Rule 9(b) because a plaintiff must "merely describe the events surrounding the conveyance and the reasons it was not made for reasonably equivalent value." *Id*. at 193.

---

[10] N.Y. Debt. Credt. Law § 276/Md. Code Ann. Com. Law § 15-207 provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Here, Defendants argue that the Complaint "does not include a single well-pled allegation of actual intent."[11]  The Court finds and concludes that the Trustee alleged sufficient facts to support Counts I and V.  In the Complaint, the Trustee describes in detail the transactions, the participants, and what was conveyed.  Counts I and V seek to avoid the granting of a lien by Debtor in favor of Defendants as part of the leveraged buyout of the stock of Debtor.  In return for the lien, Defendants provided Debtor with as much as $84 million in loan proceeds, $7.5 million of which were paid to Defendants in transaction fees and approximately $69 million of which were distributed to the Sellers as partial satisfaction of the purchase price at closing.

The Trustee further alleges that all of these actions were made with the actual intent to hinder, delay or defraud creditors.  Despite the protestations to the contrary in the Motion, Rule 9(b) allows intent to be pleaded generally, so long as a plaintiff pleads sufficient facts to give rise to an inference of the required intent.  At this stage in the litigation, this Court need not determine whether actual fraud was committed, only whether sufficient facts were pleaded which give rise to the requisite inference.  The Trustee alleges in the Complaint that almost immediately following the ACAS acquisition, the Debtor's business began to falter, substantially caused by the heavy debt burden imposed by the Insider Pledge and the lack of focus upon core business operations.  Within eight months of the transaction, Debtor had a negative net-worth of nearly $40 million.

Therefore, the facts set forth in the Complaint permit the Court to reasonably infer that Defendants acted with actual intent to defraud Debtor and its creditors.  The Trustee provided details regarding the time and place of the alleged fraudulent acts and generally alleged

---

[11] Motion, dkt. no. 19, p.14.

fraudulent intentions on the part of Defendants.  Viewed in the light most favorable to the

Trustee, the Complaint alleges sufficient facts to survive a motion to dismiss and the heightened

pleading requirements of Rule 9(b).  Accordingly, the Motion is denied as to Counts I and V of

the Complaint.

## V. Counts II, III, IV, VI, VII, VIII:  N.Y. Debt. Cred. Law §§ 273-275 and Md. Code Ann. Com. Law §§ 15-204-206

The Trustee seeks to avoid the First Transfer pursuant to N.Y. Debt. Cred. Law §§

273-275 and Md. Code Ann. Com. Law §§ 15-204 through 15-206.[12]  These Counts allege

constructive fraud on the part of ACAS in connection with the Insider Pledge and payment of

financing fees by Debtor.

As discussed *supra*, most recently, the Supreme Court set forth a plausibility standard,

requiring that a complainant plead sufficient facts to allow a court to draw a reasonable inference

that the elements of a claim have been satisfied.  *Iqbal*,  556 U.S. at 662, 129 S.Ct. at 1937.

The common factor among the above counts is that in order for the Trustee to prevail, the

transfers sought to be avoided must have been made without fair consideration.  Under both

---

[12] N.Y. Debt. Cred. Law § 273/Md. Code Ann. Com. Law. § 15-204 reads:  "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration."

N.Y. Debt.  Cred. Law ' 274/ Md. Code Ann. Com. Law ' 15-205 reads: "Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent."

N.Y. Debt. Cred. Law § 275/Md. Code Ann. Com. Law § 15-206 reads: "Every conveyance made without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."

Maryland and New York law, fair consideration will lie where:

> (1) In exchange for the property or obligation, as a fair equivalent for it and in good faith, property is conveyed or an antecedent debt is satisfied; or
> (2) The property or obligation is received in good faith to secure a present advance or antecedent debt in an amount no disproportionately small as compared to the value of the property or obligation obtained.

N.Y. Debt. Cred. Law § 272/Md. Code Ann. Com. Law § 15-203.  Courts have established a two component analysis in evaluating whether fair consideration was received: (1) the fair equivalency of the consideration provided, and (2) good faith.  *Sec. Investor Prot. Corp. v. Rossi (In re Cambridge Capital, LLC)*, 331 B.R. 47, 63 (Bankr. E.D.N.Y. 2005).

At this stage, the Trustee need not prove misrepresentation or intent to defraud, rather "the complaint must simply allege that the transferee did not receive fair consideration."  *Air Cargo*, 401 B.R. at 192.  The court in *Air Cargo* determined that the complaint contained sufficient facts to support a finding that the transfer at issue in that case was made without fair consideration based on the allegations contained in the complaint that the services rendered were "valueless" and that the services "actually harmed" the debtor.  Id. at 194.

Here, the Trustee propounded extensive facts surrounding the transfers and alleged the transfers were made without fair consideration.  In short, the Trustee alleged that Debtor was caused to grant a security interest in all of its assets in exchange for the money transferred to Debtor by Defendants, and a large part of that consideration was transferred back to Defendants or Sellers and did not remain with Debtor.  The Trustee alleged that Debtor was not the actual recipient or beneficiary of the consideration transferred to it by Defendants in exchange for the first transfer.  Having previously determined that the Trustee's allegations could support a finding of actual fraud, it is not difficult to similarly conclude that the allegations could support a

finding that the Defendants did not act in good faith when effectuating the transfer of funds and Insider Pledge. Thus, the Trustee has sufficiently alleged facts which could plausibly support a finding that the First Transfer was made without fair consideration. In describing the Insider Pledge transaction and the parties and events surrounding that transaction in such detail, the Trustee easily satisfies the standard as to Counts II, III, IV, VI, VII, VIII and the counts therefore survive the Motion.

**VI. Counts II and VI: N.Y. Debt. Cred. Law § 273/ Md. Code Ann. Com. Law § 15-204**

To state a claim under these Sections, a plaintiff must adequately plead that the transfers sought to be avoided were made by the debtor while insolvent or rendered insolvent by the transfer. The Court must, therefore, determine whether facts were alleged that could support a finding that Debtor was insolvent when the First Transaction was made, or was thereby rendered insolvent. Section 101(32) defines the existence of insolvency as when "the sum of the entity's debts is greater than all of the entity's property, at a fair valuation. . ." Maryland and New York law both define insolvency as existing when "the present fair market value of assets is less than the amount required to pay probable liability on existing debts as they become absolute and matured."[13] Under either definition, the Court finds this to be a factual determination best resolved with a fully developed record. *See R.M.L., Inc*., 92 F.3d 139, 147 (3d Cir. 1996); *Moody v. Security Pacific Business Credit, Inc*., 971 F.2d 1056, 1063 (3d Cir. 1992). Fair valuation or a fair market value require examination of not only the balance sheet, operating statements and other financial records, but also a thorough consideration of the Debtor's assets and an in depth analysis of the debts. *F.S. Bowen Elec. Co. v. United States Fid. & Guar. Co.*,

---

[13] N.Y. Debt. Cred. Law § 271/Md. Code Ann. Com. Law §15-202(a).

256 F.2d 46, 49 (4th Cir. 1958).

The foregoing analysis does not suggest that a claim under these Sections can never be disposed of at the motion to dismiss stage, however, in this case the Complaint contains a detailed explanation of how the Debtor's business began to deteriorate almost immediately after the transfers and led directly to Debtor becoming insolvent and filing for bankruptcy. These facts, along with the allegation that the transfers were made without fair consideration, support Counts II and VI, accordingly the Motion is denied as to the same..

**VII. Counts III and VII: N.Y. Debt.  Cred. Law § 274/ Md. Code Ann. Com. Law § 15-205**

The above Sections permit avoidance of transfers made without fair consideration when the person or entity making the transfers is engaged in a business or transaction for which the property remaining after the conveyance has an unreasonably small capital remaining. Having determined *supra* that the Trustee alleged sufficient facts to allow a trier of fact to reasonably conclude that the First Transfer was made without fair consideration, the Court next turns to whether at the time of the transfer, Debtor was engaged in a business or transaction for which the property remaining after the conveyance had unreasonably small capital.

 "Unreasonably small capital" is defined as "a financial condition short of equitable insolvency" or "technically solvent but doomed to fail." *Official Comm. of Unsecured Creditors of Norstan Apparel Shops, Inc. v. Lattman  (In re Norstan Apparel Shops Inc.)*, 367 B.R. 68, 79 (Bankr. E.D.N.Y. 2007).  In determining whether the target corporation in a leveraged buyout was left with unreasonably small capital, a court may consider "such factors as the company's debt to equity ratio, its historical capital cushion, and the need for working capital in the specific industry at issue." *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910

F. Supp. 913, 944 (S.D.N.Y. 1995).  The appropriate test is one of reasonable foreseeability. *Moody,* 971 F.2d at 1073.

Again, Defendants argue that the Trustee did not plead factual allegations that are sufficient to support a finding that Debtor was not adequately capitalized as a result of the First Transfer.  Instead, Defendants argue that the facts alleged show that as a result of the First Transfer, Debtor was both allowed to pay $22.5 million in operating expenses and was provided access to a $15 million revolving credit facility to ensure it had adequate working capital.  In contrast, the Trustee alleged in the Complaint that the ACAS acquisition left Debtor with an "unprecedented heavy debt load"[14] which they were unable to service less than three years later. The Trustee further noted that the Debtor's business began to decline immediately following the First Transfer and that in the nine months following the acquisition, Debtor suffered a net loss of approximately $6.8 million.  Within a short period of time, Debtor was no longer able to service its debts and continue its business.

From these facts, a trier of fact could reasonably conclude that the Insider Pledge and acquisition of Debtor by Defendants left Debtor with unreasonably small capital.  For these reasons the Court finds that the Trustee alleged adequate facts to support Counts III and VII and accordingly, the Motion is denied as to these Counts.

## VIII. Counts IV and VIII: N.Y. Debt. Cred. Law § 275/Md. Code Ann. Com. Law § 15-206

Pursuant to these Sections, transfers may be avoided if made without fair consideration by a person who or entity that believes that debts will be incurred that are beyond the person's or entity's ability to pay as they mature.  In *Norstan Apparel*, the court determined that the

---

[14] Complaint, dkt no 1, p.15.

complaint contained sufficient factual allegations to support a claim asserted pursuant to N.Y. Debt. Cred. Law § 275. There, the court found that despite the fact that the complaint did not assert that the defendants "intended or believed that Norstan would incur debts beyond its ability to pay them as they mature," it could be "inferred from all the allegations that the defendants knew that Norstan would not be able to pay its debts as they matured." 367 B.R. at 80.

Similarly, here, the Trustee alleged facts which allow the Court to reasonably infer that Defendants knew that Debtor would not be able to pay its debts as they matured. As part of the First Transfer, all of the Debtor's assets were encumbered, it took on an unprecedented debt load, including money borrowed to pay closing costs and other debts, and within a relatively short amount of time was unable to service its debt leading to the filing of the bankruptcy. Considering these facts in the light most favorable to the Trustee, it is plausible that Defendants were aware that Debtor would not be able to sustain this heavy debt load and would be unable to service the debt. Accordingly, the Motion is denied as to Counts IV and VIII.

## IX.    Count XI and XV: 11 U.S.C. §§ 548(a)(1)(A), 550(a), 551

The Trustee seeks to avoid the cashout payment by Debtor to Defendants, of the full value of the Insider Pledge ("Second Transfer") pursuant to §§ 548(a)(1)(A), 550(a) and 551. Section 548(a)(1)(A) provides that a trustee may avoid any transfer of an interest of a debtor in property within two years before the date of the filing if a debtor voluntarily or involuntarily "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted. . . ."

In the Complaint, the Trustee alleges that the Second Transfer was made without fair

-14-

consideration or reasonably equivalent value and was solely intended to allow Defendants to recoup a significant part of the purchase price and put the risk of failure of Debtor primarily upon its creditors.  Further, the Trustee alleges that this action was taken with the actual intent to hinder, delay or defraud creditors.  Defendants, in the Motion, reiterate the argument that if the Court ignores conclusory allegations, the Complaint contains no well-pled allegations regarding actual intent.

Applying the same legal analysis as was applied to Counts I and V, the Trustee's claims are sufficient to survive the Motion.  The Trustee alleged that in August 2007, Defendants required Debtor to refinance, with non-insider lenders, solely to allow Defendants to recoup as much of the funds purportedly loaned to Debtor as possible.  In the Complaint, the Trustee further alleged Defendants required Debtor to deliver the $46 million in proceeds from the refinancing to Defendants as repayment for the prior loan for neither reasonably equivalent value nor fair consideration and that these transactions were undertaken with actual intent by Defendants to hinder, delay and defraud creditors of Debtor.  Despite forecasting a net income $4.5 million for 2007, immediately preceding the closing on the Second Transfer, Debtor sustained a net loss of approximately $8.5 million.  Debtor subsequently reported that 2007 was "the most challenging year in its history"[15] and the year ended showing a net loss of $5.7 million.

These facts are sufficient to give rise to an inference that Defendants intended to defraud creditors of Debtor.  The Complaint asserts extensive and detailed facts describing the circumstances of the transactions which go well beyond threadbare recitals of the bare elements of the claims and therefore satisfy the heightened pleading requirements of Rule 9(b).  This

_____

[15] Complaint, dkt. no. 1, p16.

Court finds and concludes that the Trustee has sufficiently described the events surrounding the conveyance and the reasons why it was not made for reasonably equivalent value to permit the Court to draw an inference of actual fraud.  Accordingly, Counts XI and XV survive the Motion.

## X. Count X: 11 U.S.C.  §§ 548(a)(1)(B), 550(a), 551

Pursuant to the above Sections, the Trustee seeks to avoid the Second Transfer.  Section 548(a)(1)(B) permits a trustee to avoid any transfer of an interest of the debtor in property if Debtor received "less than a reasonably equivalent value in exchange for such transfer. . ." and, (1) was either insolvent on the date the transfer was made or became insolvent as a result of the transfer, (2) was engaged in a business or transaction for which any property remaining with the debtor was an unreasonably small capital, or (3) made such transfer for the benefit of an insider.

The Bankruptcy Code does not provide a definition for "reasonably equivalent value", and courts have developed various tests in order to determine if consideration of reasonably equivalent value was given in an exchange.  *See Mellon Bank, N.A. v. Official Committee of Unsecured Creditors of R.M.L., Inc.* (*In re RML, Inc.*), 92 F.3d 139, 153 (3d Cir. 1996) (In reviewing a bankruptcy court's determination that reasonably equivalent value was not exchanged between the parties, the Third Circuit noted that "the bankruptcy court appropriately relied on the totality of the circumstances test.").  *But see Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201,203 (1980), overruled on other grounds in *Bfp v. Resolution Trust Corp.*, 511 U.S. 531, 114 S. Ct. 1757 (1994)[16] (Where the Fifth Circuit found that a sale that yielded 70% of the

---

[16] In *Bfp,* the Supreme Court addressed the proper test to be used in evaluating whether reasonably equivalent value existed in transfers made through foreclosure sales and held that, transfers made through foreclosure sales completed in compliance with state law *per se* constituted reasonably equivalent value. 511 U.S. at 545, 114 S.Ct. at 1765. The fact pattern in the case at bar does not address value received via a foreclosure sale.

fair market value was presumptively valid); *In re Madrid*, 725 F.2d 1197, 1203 (9th Cir. 1980) (A price yielded by a foreclosure sale conducted in the ordinary course will constitute reasonably equivalent value).  The  the Fourth Circuit has adopted a test that looks at the totality of the circumstances.  *See In re Morris Communications NC, Inc*, 914 F.2d 458, 466-67 (4th Cir. 1990) (rejecting a "mathematical formula for determining reasonable equivalence and opt[ing][] for the standard that 'reasonable equivalence should depend on all the facts of each case.'"); *Brown v. Goldome Realty Credit Corp.* (*In re Brown*), 126 B.R. 481, 484 (Bankr. D.Md. 1991) (Recognizing that the Fourth Circuit in *Morris Communications* had rejected using a "rigid mathematical formula . . . in favor of a more flexible, case-by-case analysis.").

In determining whether reasonably equivalent value was given, a court can consider factors such as the fair market value of the benefits received, the existence of an arm's length relationship and the good faith of the parties.  *In re Morris Communications*, 914 F.2d at 467.

The Complaint assumes that the First Transfer was invalid.  Taking this as true, the distribution of the cashout funds could have all the indicia of an avoidable transfer.  In the Complaint, the Trustee alleged that Defendants required Debtor to refinance with non-insider lenders.  He further alleged that Defendants used all of the proceeds of the refinancing to repay itself in exchange for a release of prior liens that the Trustee has alleged to be invalid.  Assuming the truth of all the allegations, the payment of the proceeds of the refinancing by Debtor to Defendants was not in exchange for reasonably equivalent value, and the Motion is, accordingly denied as to Count X.

**XI. Counts XI and XV: N.Y. Debt. Cred. Law §§ 276, 278, 279 and Md. Code Ann. Com. Law §§  15-207, 15-209 and 15-210**

The Trustee seeks to avoid the Second Transfer, of the full value of the "Insider Pledge", in 2007 pursuant to N.Y. Debt. Cred. Law §§ 276, 278, 279[17] and Md. Code Ann. Com. Law §§ 15-207, 15-209 and 15-210.  Having already determined that the Trustee alleged sufficient facts to support a finding of actual fraud regarding the second transfer, the Court finds that the Complaint adequately supports Counts XI and XV.

## XII.  Counts XII, XIII, XIV, XVI, XVII, XVIII:  N.Y. Debt. Cred. Law §§ 273-275 and Md. Code Ann. Com. Law §§ 15-204-206

The Trustee seeks to avoid the Second Transfer pursuant to N.Y. Debt. Cred. Law §§ 273-275 and Md. Code Ann. Com. Law §§ 15-204 through 15-206.18.[18]  These Counts allege constructive fraud on the part of Defendants in connection with the refinancing and cashout payment of the value of the Insider Pledge by Debtor to Defendants.

Applied to these cases, the plausibility standard requires only that "the complaint [] simply allege that the transferee did not receive fair consideration."  *Air Cargo*, 401 B.R. at 192. Here, the Trustee alleged that Debtor paid the proceeds of the refinancing to Defendants with no fair consideration.

Again, common to all Counts in this Section, the Court must make a determination that the transfers were made without fair consideration.  The same facts used to support Count X are applicable here.  The Trustee alleged that the First Transfer was invalid, and that based on that fact, no fair consideration was provided when Defendants caused Debtor to refinance and pay the

---

[17] N.Y. Debt. Cred. Law § 276/Md, Code. Ann. Com. Law. § 15-207 provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

[18] *See supra* footnote 12.

proceeds to Defendants in exchange for releasing the First Transfer liens.  The Court finds and concludes, that the Trustee has alleged sufficient facts surrounding this transfer to satisfy the pleading requirements set forth in Rule 8(a)(2) as to the existence of fair consideration.

## XIII. Counts XII and XVI: N.Y. Debt.  Cred. Law § 273/ Md. Code Ann. Com. Law § 15-204

Under these Sections, the Trustee was required to allege that the transfers sought to be avoided were made by Debtor while insolvent or rendered insolvent by the transfer and were made without fair consideration.

The analysis of these claims is nearly identical to the discussion in Part V, and the discussion of law will not be repeated herein.  The Court must consider balance sheets, operating statements and other financial records, but also the Debtor's assets and debts, none of which are before the Court.  Here, the Trustee alleged in the Complaint that following the Second Transfer, the Debtor's business continued to deteriorate and that Debtor ultimately defaulted on its loan payments to the non-insider lenders soon after.  Because of the default in payments, the non-insider lenders accelerated the entire debt, leading to the decision to file for bankruptcy protection.  From these facts, a trier of fact could reasonably conclude that Debtor was insolvent or rendered insolvent by the transfer.  Accordingly, Counts XII and XVI will not be dismissed.

## XIV. Counts XIII and XVII: N.Y. Debt. Cred. Law § 274/ Md. Code Ann. Com. Law § 15-205

Under these Sections, the Trustee may avoid transfers made without fair consideration when the person making the transfers is engaged in a business or transaction for which the property remaining after the conveyance is an unreasonably small capital.  Having already

determined that the Trustee alleged sufficient facts to permit a trier of fact to reasonably conclude that the Second Transfer was made without fair consideration, the Court will turn to whether at the time of the Second Transfer, Debtor was engaged in a business or transaction for which the property remaining after the conveyance is an unreasonably small capital.

Defendants argue that the factual allegations contained in the Complaint show that Debtor was adequately capitalized at the time of and after the Second Transfer. Defendants further argue that the exhibits attached to the Complaint show that after conducting extensive due diligence, Debtor warranted that it was solvent and adequately capitalized. Defendants also cite to the fact that Debtor never drew on its $25 million line of credit to show that they were adequately capitalized at the time of the Second Transfer.

As was discussed at more length supra, unreasonably small capital has been defined as "a financial condition short of equitable insolvency" or "technically solvent but doomed to fail." *Norstram Apparel*, 367 B.R. at 69. The Court must determine what was reasonably foreseeable at the time of the transfer. *Moody*, 971 F.2d at 1073. Like the *Norstan Apparel* court, this Court will not rely exclusively upon the projections or warranties of Debtor at the time of the transfer. Instead, courts must consider whether those projections were reasonable when made. Here, the Trustee outlined the deterioration of the Debtor's business in detail in the Complaint. The Trustee alleged that despite forecasting a net income in 2007 of approximately $4.5 million, by the end of July 2007, the month preceding the closing of the second transfer, Debtor had already suffered a net loss of approximately $8.5 million. Ultimately, Debtor suffered a net loss of $5.7 million in 2007. Having alleged sufficiently that the payment of the cashout funds was made without fair consideration, and facts that could reasonably support a finding that the Second

-20-

Transfer left the company with an unreasonably small capital, the Court finds and concludes that the Trustee has alleged adequate facts to sustain Counts XIII and XVII.

## XV.  Counts XIV and XVIII: N.Y. Debt. Cred. Law § 275/Md. Code Ann. Com. Law § 15-206

The above Sections allow the avoidance of transfers made without fair consideration if made by a person who intends or who believes that he will incur debts beyond his ability to pay as they mature.  As was discussed above, courts have held that such claims can survive a motion to dismiss if it could be inferred from the allegations that the defendants knew the debtor would not be able to pay its debts as they matured.  *See generally Norstan Apparel*, 367 B.R. 68.  Again in *Norman Apparel*, the trustee alleged that the defendants effectuated two fraudulent transfers in connection with a leveraged buyout transaction and that as a result, all of the debtor's property became encumbered resulting in a sharp decline in working capital.

Here, the Trustee has alleged many of the same facts and many additional facts to support these claims.  In addition to describing the Second Transfer in detail, the Trustee alleged in the Complaint that in the first six months of 2007, the months leading up to the Second Transfer, Debtor posted a net loss of almost $8.5 million.  That loss was incurred despite projections that Debtor would have a net income of $4.5 million during calendar year 2007.  This alone is enough to permit the Court to reasonably infer that Defendants knew Debtor would not be able to pay its debts as they matured.  Accordingly, Counts XIV and XVIII will not be dismissed.

## XVI: Count XIX: Md. Code. Ann. Corp & Ass'ns. § 2-405.1(a)

Count XIX of the Complaint alleges that Dale Stohr and Terry Bateman, as directors of Debtor, owed a duty of care and a duty of loyalty to Debtor which they breached by participating

in the leveraged buyout and cashout scheme.

In Maryland the standard of care owed by corporate directors is codified in Md. Code. Ann. Corp & Ass'ns. § 2-405.1(a).[19]  Defendants characterize § 2-405.1 as a codification of the business judgment rule.  While this characterization of the rule is often used,[20] § 2-405.1 is also described as "the code of conduct for directors" whereas the business judgment rule serves to assist with judicial review.  *See Edge Partners, L.P. v. Dockser*, 944 F. Supp. 438 (D. Md. 1996). Regardless of the precise description of § 2-405, the analysis remains unchanged when examining whether acts taken by directors in their representative capacity meet the requisite standard of care.

The business judgment rule affords corporate directors a presumption of satisfaction. *See Md. Code. Ann. Corp & Ass'ns. § 2-405.1(a)* ("An act of a director of a corporation is presumed to satisfy the standards of subsection (a) of this section.").  Accordingly, where a plaintiff alleges a breach of fiduciary duty, the burden falls on the plaintiff to rebut the presumption that the duty was satisfied.[21]  *Mona v. Mona Elc. Grp. Inc.*, 176 Md. App. 672, 696-697 (2007).  Acts taken by

---

[19] Md. Code. Ann. Corp. & Ass'ns § 2-405(1)(a) reads: In general – A director shall perform his duties as a director inc including his duties as a member of a committee of the board on which he serves:
(1) In good faith;
(2) In a manner he reasonably believes to be in the best interests of the corporation; and
(3) With the care that an ordinarily prudent person in a like position would use under similar circumstances.

[20] *See Yost v. Early,* 87 MD. App. 364, 389, 589 A.2d 1291, 1298 (Md. App. 1991) (*quoting Savings and Loan Ass'ns,* 62 Op. Att'y Gen. 804, 811-12 (1977)).

[21] The Chapter 7 Trustee, in setting out the standard in the Opposition, asserts that "Whenever a fiduciary relationship is established, the burdens falls upon the dominant party to show that his or her conduct is proper."  *Trustee's Opposition to Motion to Dismiss* (the "Opposition"), dkt. no. 28 at 42 *(quoting Desser v. Woods*, 266 Md. 696, 708-709, 296 A.2d 586 (1972)).  The fiduciary duty discussed in *Desser* involved a confidential relationship in a guardianship context.

-22-

defendant-directors will therefore be protected by the business judgment rule unless such acts

"constitute gross negligence, waste of corporate assets or culpable negligence." *Edge Partners,*

*L.P. v. Dockser*, 944 F. Supp. at 441 (quoted in *Parish v. Maryland & Virginia Milk Producers*

*Ass'n*, 250 Md. 24, 242 A.2d 512, 540 (Md. 1968)).  *Accord Gagliardi v. Trifoods Int'l, Inc.*, 683

A.2d 1049, 1053 (Del.Ch. 1996) ("Overcoming the presumptions of the business judgment rule

on the merits is a near-Herculean task. . .").

> At the motion to dismiss stage, to prevail, defendants must demonstrate that the factual

allegations set out in the complaint fail to rebut the statutory presumption of performance. *Swope*

*v. Quadra Realty Trust Inc.*, 28 Misc. 3d 1209A; 2010 N.Y. Misc. LEXIS 3260; 2010 WL

2802165.  *See also Winters v. First Union Corp.*, No.  01-CVS-5362 , slip. op. at 11 (N. C.

Super. Ct.  July 12, 2001) ("In order to survive a motion to dismiss, the complaint must allege, in

other than conclusory terms, that the board was inattentive or uniformed, acted in bad faith or . .

.was unreasonable.").  Applying the *Swope* standard and the *Iqbal* standard discussed *supra*,

unless a complaint contains sufficiently well-pleaded allegations, which taken as true and

construed in the light most favorable to the plaintiffs, set out a plausible inference that the

directors failed to properly "fulfill their heir duties, that is, the directors acted fraudulently or in

bad faith", a court must dismiss the cause of action.  *Seidel v. Byron*, 405 B.R. 277, 290 (N.D. Ill.

2009).  *Accord  Official Committee of Unsecured Creditors v. Bay Harbour Master Ltd. (In re*

*BH S & B Holdings LLC)*, 420 B.R. 112, 146 (Bankr. S.D.N.Y. 2009)("In order for plaintiffs'

duty of care claims to survive a motion to dismiss, they must sufficiently plead facts which if

true would take defendants' actions outside the protection afforded by the business judgment

---

Therefore, its facts, and related discussion of burdens are inapplicable to the case at bar.

rule.").

Here, the Defendants' argument centers around the assertion that the Complaint is compiled largely of conclusory allegations, which once disregarded by the Court pursuant to *Ibqual*, leaves insufficient facts for the Court to conclude that a breach of fiduciary duty occurred.  The Trustee, in turn, urges the Court to deny the Motion and allow the adversary proceeding to proceed and argues that at this stage, the Trustee's claims "need only be plausible, based on the facts alleged in the Complaint."[22]  The Trustee correctly notes that by majority, the cases that establish the standard for determining whether a breach of fiduciary duty occurred were all decided on the merits rather than based upon the scant record that exists at the motion to dismiss stage. *See e.g. Seidel,* 405 B.R. at 292 ("[A]t this stage, the plaintiff's allegations need not rise to the level of supporting a judicial determination that the directors' actions fall outside the business judgment rule."). *See also Weaver v. ZeniMax Media, Inc.*, 175 Md. App. 16, 44-57; 923 A.2d 1032, cert. denied, 401 Md. 174 (2007) (breach of duty of loyalty is a question of fact).

Notwithstanding the Defendants' arguments, Count XIX sufficiently states alleged facts which would support plausible bases for a trier of facts to find that the directors of Debtor breached their fiduciary duty owed to the corporation.   In relevant part, the Trustee asserts that Debtor did not receive either reasonably equivalent value or fair consideration for the transfers by lien from Debtor to Defendants and that Debtor was rendered insolvent as a result of the transfers, left with insufficient liquidity to pay its debts, and was left with insufficient capital for its business: "[F]ollowing these transactions Barton-Cotton was unable to pay its obligations and

---

[22] Opposition, dkt. no. 28, p.46.

filed for relief under Chapter 7 of the Bankruptcy Code."[23]  The Trustee explains that almost immediately upon the closing of the ACAS acquisition Debtor began to falter, in large part due to the heavy debt lead imposed on it by Defendants.  The Complaint further alleges that at the at the end of 2006, eight months after the ACAS acquisition, the Debtor's balance sheet reflected an asset value of approximately $138.4 million and $79.5 million in long term debt and that excluding goodwill and intangible assets, due to the debt load imposed upon Debtor by Defendants, at the end of 2006, Debtor had a negative net worth of approximately $40 million. Finally, the Trustee argues that Debtor suffered under the direction of ACAS, facing the  most "challenging year in its history" because it failed to focus on the needs of the company and as a result disappointed its clients and investors.[24]

The *Iqbal* plausibility standard requires only that there is more than the "sheer possibility" that the defendants actions were unlawful. 556 U.S. 662,   In *Crowthers McCall Pattern, Inc. v. Lewis*, 129 B.R. 992, 999 (S.D.N.Y. 1991), the United States Bankruptcy Court for the Southern District of New York explained that to that to survive a motion to dismiss where a plaintiff has alleged that corporate directors approved a leveraged-buy-out that was also a fraudulent conveyance, the plaintiff need only have pleaded sufficient facts to demonstrate that it is possible that directors that a breach of fiduciary duty occurred.

While *Crowthers* specifically addressed a motion to dismiss a claim of aiding and abetting a breach of fiduciary duty, the Court finds the reasoning instructive.  In *Crowthers*, the creditor's committee brought suit against former lenders and stockholders alleging that a leveraged buyout and merger had resulted in a fraudulent conveyance that was avoidable under

---

[23] Opposition, dkt. no. 28, p.44.
[24] *Id.*

§ 544. *Crowthers*, like the case at bar involves a complicated fact pattern with various transactions, that when minimized to its basic facts reveals a typical leveraged buyout structure.

In *Crowthers,* the plaintiffs alleged that certain directors were enriched by the leveraged buyout and breached their fiduciary duty by approving the leveraged buyout and participating in its facilitation which resulted in their enrichment.  In denying the motion to dismiss, the court found that the complaint had plead sufficient facts to state a claim for breach of fiduciary duty by asserting that the directors approved the leveraged buyout. 129 B.R. at 1000.

Here, the facts set out in the complaint set out a plausible claim for relief by asserting that the directors failed to exercise the requisite duty of care and loyalty to Debtor by approving the Debtor's grant of the Insider Pledge and cashout payment, which left it with insufficient capital to pay its debts.  Viewed in the light most favorable to the Trustee, the Complaint presents a record with sufficient facts and assertions for a plausible finding by the Court directors Stohr and Bateman knew that approving the transaction was not in the best interests of Debtor and instead served to benefit Defendants, and in approving the transaction breached their respective fiduciary duties to Debtor.  Accordingly, the Motion is denied as to Count XIX of the Complaint.

## XVII:  Conclusion

Notwithstanding the Defendants' arguments that the Trustee has merely recited the language of the applicable statutes and therefore insufficiently pleaded facts from which a plausible inference arises that Debtor was rendered insolvent or left with insufficient capital or liquidity, the Trustee's Complaint includes a detailed explanation of both transfers, and allegations as to the failure of the Debtor's business following the questioned transfers and note obligations. The Complaint alleges facts which, if taken as true, support plausible bases for a

trier of fact to find that Defendants received a transfer of an interest in the property of Debtor for

which Debtor did not receive reasonably equivalent value.  Accordingly, the Motion is denied in

full.

cc:
Counsel for Plaintiff
Counsel for Defendants

**<u>END OF DECISION</u>**